# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTINA KNAPP and
DOUGLAS KNAPP,**                    :

    **Plaintiffs**                    :

           **v.**                    :

**UNITED STATES OF AMERICA,**       :
**DEPT. OF HEALTH AND HUMAN**
**SERVICES,**[1]                    :

    **Defendant**                    :

**CIVIL ACTION NO. 3:18-1422**

**(JUDGE MANNION)**

## MEMORANDUM

## I.  Background

Plaintiffs, Christina Knapp and her husband Douglas Knapp, filed the above captioned medical negligence action on July 17, 2018, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671, *et seq*. (Doc. 1). Plaintiffs essentially allege that Christina went to Pike County Family Health Center, (the "Health Center") Hawley, Pennsylvania, in May of 2015 for medical care regarding a red rash on her head and tightening of her jaw, and that Eileen Arenson, C.R.N.P., negligently treated her. They also allege that

---

[1]The only proper defendant in an FTCA action is the United States itself. Thus, claims brought against parties other than the United States, such as the federal agency, should be dismissed. See Priovolos v. FBI, 632 Fed.Appx. 58, 60 (3d Cir. 2015). Pike County Family Health Center is one of the sites operated by Wayne Memorial Community Health Centers ("WMCHC"), which is a federally qualified health center, and receives funding from the U.S. Department of Health & Human Services ("HHS"). (Doc. 11-3). As such, WMCHC was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2017.  See Farrell v. United States, Civil No. 19-1786, M.D.Pa. (Feb. 18, 2020).

as a result of the negligent treatment Christina suffered serious injuries, including microscopic polyangiitis and chronic kidney disease stage 3, which became permanent. Douglas Knapp asserts a claim for loss of consortium. Before they filed the instant lawsuit in this court, plaintiffs faxed an SF-95 administrative tort claim to the Health Center on June 28, 2017. Plaintiffs indicated that the date of the incident was July 15, 2015. The SF-95 was sent to WMCHC on July 19, 2017, and then emailed to HHS.

Presently before the court is the United States' motion to dismiss, or alternatively, for summary judgment due to plaintiffs' failure to have presented their tort claim to the HHS within two years from the date that their claim accrued. (Doc. 9). The motion has been fully briefed and a statement of fact, a response along with additional facts, and exhibits have been submitted. Thus, the motion is ripe for disposition.

For the reasons that follow, the United States' motion for summary judgment will be granted and judgment will be entered in favor of the United States because plaintiffs failed to present their tort claim to the proper federal agency within two years of the accrual of their cause of action as required by 28 U.S.C. §2401(b).[2]

---

[2]On April 9, 2019, the court granted the United States' motion for protective order and stayed discovery in this case pending the resolution of its dispositive motion. (Doc. 25).

## II.    **Statement of Undisputed Facts**[3]

The Health Center is operated by WMCHC and WMCHC is a federally supported health center and receives funding from HHS.

Christina Knapp ("Knapp") sought medical attention at the Health Center on May 14, 2015, for a red rash on her head and tightening of her jaw. On the same day, Arenson diagnosed Knapp with Lyme disease and prescribed Doxycycline.

On May 22, 2015, Knapp developed a rash on her hands, and experienced difficulty eating, as well as weight lost. Subsequently, Knapp consulted a number of physicians, including Arenson, and was hospitalized twice. Also, during this time, an on-call doctor advised Knapp to discontinue Doxycycline immediately in case her rash was a drug-related reaction and Knapp stopped taking the medication.

On May 27, 2015, Knapp was examined by Arenson because she continued to have chills, was feverish, and had blood red eyes. At this visit, Arenson advised Knapp to resume taking Doxycycline and finish the course of the medication.

---

[3]Since the court considers the evidence submitted by the parties along with their statements of material facts and their responses, it treats the United States' motion as one for summary judgment. Also, since the parties state the correct legal standard for a Rule 56 summary judgment motion in their briefs, the court does not repeat it herein.

The denials of both parties, without citation to the record, to the statements of material facts submitted by the opposing party, which are supported by citation to the record, shall be deemed admitted pursuant to Local Rule 56.1, M.D.Pa.

After that, Knapp's condition worsened and on June 3, 2015, she discontinued the Doxycycline again.

Then on June 10, 2015, when Knapp's condition worsened again, she went to the emergency room at Geisinger Community Medical Center. At the hospital, the treating physician allegedly indicated that he "was appalled that the Doxycycline was prescribed without diagnosis of Lyme Disease."

Following several other doctor's visits, Knapp "learned for the first time [on July 15, 2015] that she was suffering from microscopic polyangiitis and chronic kidney disease stage 3 caused by the Doxycycline."

On May 26, 2017, plaintiffs instituted an action against Arenson and the Health Center in the Court of Common Pleas of Pike County, Pennsylvania, with the filing of a Praecipe for Writ of Summons.

On June 20, 2017, the Pike County Sheriff's Office served the Writ of Summons on Arenson and the Health Center.

On June 23, 2017, counsel for plaintiffs received a telephone call from Matthew P. Keris, Esq., counsel for the Health Center, and was advised that the Health Center received federal funding, and that the action commenced against it by plaintiffs in the Pike County Court of Common Pleas had to be pursued through the Federal Tort Claims Act.

On June 28, 2017, plaintiffs faxed an administrative tort claim, SF-95, to the Health Center. The SF-95 asserted claims on behalf of both plaintiffs and stated that the date of the incident giving rise to their claims was July 15, 2015, and that their claims were related to the allegedly negligent care Knapp

4

was provided by Arenson. By July 18, 2017, the SF-95 tort claim form was given to Arenson, however, she does not recall who gave it to her or specifically when she received it.

On July 19, 2017, Arenson forwarded the SF-95 to Norma Nocilla, Risk Manager for WMCHC. That same day, Nocilla emailed the SF-95 to Meredith Torres, a Senior Attorney in HHS's Office of General Counsel, Claims and Employment Branch.

Torres has access to the records regarding all claims against HHS, and she searched those records and did not find any administrative tort claim SF-95 that was submitted to HHS by plaintiffs prior to July 19, 2017.

Plaintiffs then filed the instant complaint in this federal court on July 17, 2018, (Doc. 1), against the United States and HHS. Plaintiffs state that since HHS took no action on their SF-95 tort claim within 6 months, they commenced their instant case in federal court pursuant to 28 U.S.C. §2675(a). Plaintiffs' state court action against Arenson and the Health Center remains pending. To date, there is nothing in the record to suggest that HHS denied plaintiffs' administrative tort claim SF-95, and it appears that HHS has not decided plaintiffs' SF-95 since it was not timely presented.

## III.  **Discussion**

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in

pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

The plaintiff has the burden of demonstrating that the agency actually received the administrative claim. Lightfoot v. United States, 564 F.3d 625 (3d Cir. 2009). This burden rests with the plaintiff because, in general, the United States enjoys sovereign immunity from suit unless it otherwise consents to be sued. White–Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). The United States' "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." Id. The Federal Tort Claims Act constitutes "a limited waiver of the United States's sovereign immunity." Id. The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. §1346(b)(1); see also 28 U.S.C. §2674.

"The cause of action provided by the FTCA, 28 U.S.C. §1346(b), is the exclusive remedy 'for injury or loss of property, or personal injury or death

arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" Vargas v. Eckhardt, 2018 WL 4676050, *3 (D.N.J. Sept. 28, 2018) (citing 28 U.S.C. §2679(b)(1)). "The statute confers *exclusive* jurisdiction over such claims on federal district courts." Id. (citing 28 U.S.C. §1346(b)(1)) (emphasis original).

Prior to commencing an FTCA action against the United States in federal court, however, a plaintiff must "first present[ ] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. §14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. §2675(a).

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera v. First Nat'l Bank of New Jersey, 879 F.2d

7

1186, 1194 (3d Cir. 1989)). The Supreme Court has likewise succinctly explained that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011); Accolla v. United States Gov't, 369 F. App'x 408, 409–10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies); Hurley v. Fata, 2019 WL 6975095, *3 (D.N.J. Dec. 19, 2019) ("Exhaustion of all administrative remedies under the FTCA 'is jurisdictional and cannot be waived.'" "Strict compliance with Section 2675(a) is required to establish subject matter jurisdiction over an FTCA suit.") (internal citations omitted).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. §2401(b) or its tort claim under the FTCA will be "forever barred."[4] See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). In order

---

[4] 28 U.S.C. §2401(b) states:

[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

to sue the United States in District Court and avoid violating the FTCA's express statute of limitations, a tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir. 1989). The determination of when a claim has accrued under the for statute of limitations purposes is governed by federal law and not state law. Miller v. Phila. Geriatric Center, 463 F.3d 266, 270 (3d Cir. 2006). The claim accrues "when a plaintiff knows of both the existence and the cause of his injury." Id. at 272. "[A] claim of medical malpractice under the FTCA accrues when a plaintiff possesses the facts such that, as a reasonable person, he or she should have known of the malpractice." Young v. Temple Univ. Hosp., 2019 WL 5569510, *7 (E.D.Pa. 2019) (citing United States v. Kubrick, 444 U.S. 111, 119–122 (1979)). The claim is "presented" (thus tolling the running of the limitations period) when an executed SF-95 and a claim for money damages in a sum certain are received by the appropriate government agency. 28 C.F.R. §14.2.

At issue is when plaintiffs properly presented their tort claim to the applicable federal agency, HHS. Here, the undisputed evidence shows that HHS did not receive plaintiffs' SF-95 tort claim until July 19, 2017. Also, according to plaintiffs' own admissions in their SF-95 and in their instant complaint, their negligence claim accrued on July 15, 2015. Thus, plaintiff's

9

were required to have presented their tort claim to HHS, within two years of July 15, 2015, i.e., by July 15, 2017. Although plaintiffs faxed their SF-95 on the Health Center on June 28, 2017, the question becomes whether this constituted receipt by the appropriate federal agency for purposes of being presented to HHS. Unfortunately, it does not.

The government argues, "Plaintiffs' act of faxing the SF-95 to the Health Center prior to the July 15, 2017 deadline does not satisfy the requirements of federal law with respect to presentment of a claim, because, *inter alia*, the Health Center is not considered a federal agency." (Doc. 18 at 3) (citing Motta ex rel. A.M. v. U.S., 717 F.3d 840, 845 (11th Cir. 2013) (affirming dismissal of FTCA complaint where claimant submitted SF-95 to the health center within two years of the accrual of her claim, but did not submit SF-95 to HHS until after the two years had elapsed since health center was not a federal agency)).

The government then contends as follows:

Plaintiffs' request that the Court utilize tolling principles to save their claim from dismissal completely ignores the fact that they did not present their claim to HHS prior to the applicable deadline. The timely presentment of a claim is essential to the successful filing of an action pursuant to the FTCA. Plaintiffs never presented a claim directly to HHS. While their claim eventually arrived at HHS through other means, by the time the claim arrived, the filing deadline had passed. To this day, Plaintiffs have not presented a claim directly to the agency, as per the requirements of the FTCA. HHS merely came into possession of the SF-95 because Arenson forwarded the document to Nocilla who, in turn, forwarded the document to Torres (Doc. 11, at ¶¶12-16). Torres's receipt of the

SF-95 does not constitute presentment because the form arrived four days after the deadline had passed. Plaintiffs' act of filing a state court praecipe prior to these deadlines did not toll those deadlines.

(Id. at 3-4).

Plaintiffs argue that they should be able to avail themselves of the Westfall Act's Savings Clause. *See* 28 U.S.C. §2679(d)(5). No doubt that "[t]he FTCA required [plaintiffs] to present [their] claim to the appropriate federal agency—here, the Department of Health and Human Services (HHS)—within two years of its accrual." Huerto v. U.S., 601 Fed.Appx. 169, 170 (3d Cir. 2015) (citing 28 U.S.C. §2401(b)). In the instant case, the court has found that plaintiffs failed to present their SF-95 tort claim to HHS within the 2-year period. However, in 1988, Congress amended the FTCA and "established a procedure by which an FTCA action that is filed in the wrong forum (such as the state court here) will be removed by the Attorney General to federal district court, at which point the United States is substituted as defendant, the case is dismissed for failure to exhaust administrative remedies, and the plaintiff gets a second chance to file the FTCA claim with the appropriate federal agency." Id. at 171(citing 28 U.S.C. §2679(d)). "[T]he Westfall Act contains a tolling provision (known as its "savings clause")", which provides that in order "for a tort action to avoid dismissal under the FTCA statute of limitations after it was mistakenly filed in state court, the plaintiff must have: (1) filed her state court action within two years of the

alleged injury; (2) presented her FTCA claim to the correct federal agency within 60 days of the removal and dismissal of the wrongly filed state court action; and (3) if denied by the agency, appealed to federal district court within six months." Id. (citing §2679(d)(5)). See also Santos ex rel., Beato v. U.S., 559 F.3d 189, 193-94 (3d Cir. 2009) ("Pursuant to [the Westfall Act's] savings clause an errant plaintiff whose suit is removed to a district court, and then dismissed because she failed to bring the timely required administrative claim, will be credited with the date that she filed her claim in the wrong forum for purposes of the FTCA's statute of limitations.").

Even if the Westfall Act's Savings Clause is applicable in this case involving a Healthcare Center, plaintiffs fail to satisfy the second requirement. Although they initiated a state court action within two years of their alleged injury, i.e., on May 26, 2017, they failed to present their tort claim to HHS within 60 days of the removal and dismissal of the wrongly filed state court action. The United States was not substituted as the proper party in plaintiffs' state court action, and the state court case was not removed to federal court with the government moving to dismiss it for failure to exhaust administrative remedies. In fact, plaintiffs' state court action was not dismissed and it remains pending against Arenson and the Health Center in Pike County Court. Then, almost 14 months after plaintiffs filed their state court action, they filed the instant complaint in this federal court on July 17, 2018. Unfortunately, during all of this time plaintiffs did not properly present their tort

claim to HHS within two years of July 15, 2015 (the date their cause of action accrued), and HHS did not receive plaintiffs' SF-95 tort claim until July 19, 2017. Thus, plaintiffs never timely presented their tort claim to HHS. Significantly, plaintiffs acknowledge that they were on notice that their action fell under the FTCA prior to the deadline to present their SF-95 to HHS. Counsel for plaintiffs avers that on June 23, 2017 counsel for the Health Center (Keris) advised him that plaintiffs were required to pursue their claim through the FTCA. Rather than properly submitting their SF-95 to HHS as required, plaintiffs faxed and hand delivered the SF-95 to the Health Center on June 28, 2017. It was incumbent on counsel for plaintiffs to determine the "procedural machinations" under the FTCA and how to properly present plaintiffs' SF-95 to the applicable federal agency within the deadline. No doubt that "[b]ecause the FTCA expresses the consent of the United States to be sued for certain claims, 'the terms of such consent [including the administrative exhaustion procedure] define the court's subject matter jurisdiction' and must be 'strictly construed.'" <u>Vargas</u>, 2018 WL 4676050, *4 (quoting <u>White-Squire</u>, 592 F.3d at 456). Additionally, "[t]he burden is on a plaintiff to establish that a proper administrative claim has been filed." <u>Livera</u>, 879 F.2d at 1195.

As such, if applicable, the Westfall Act's Savings Clause was never triggered in this case and plaintiffs' untimely presented tort claim to HHS was not rendered timely pursuant to the Savings Clause.

Moreover, the government contends that since "this matter involves alleged acts by employees of a federally supported health center, the Plaintiffs' only FTCA remedy is relief potentially available through the Federally Supported Health Centers Assistance Act, 42 U.S.C. §§ 233(g)-(n), which itself incorporates only the provisions of the Public Health Service Act, 42 U.S.C. §233, and not provisions of the Westfall Act." (Doc. 18 at 8). The government argues that the Public Health Service Act's provisions govern the instant case and that "the Supreme Court [in Hui v. Castaneda, 559 U.S. 799, 809-12 (2010),] has ruled that the Westfall Act's provisions are not incorporated into the Public Health Service Act." (Id.). However, in Hui, the Supreme Court did not decide the issue of whether the Westfall Act's Savings Clause applied to an action against PHS officers and employees.

As noted above, the Health Center is one of the sites operated by WMCHC, which is a federally qualified health center, and receives funding from HHS. "Under 42 U.S.C. §254b(c)(1)(A), the government 'may make grants to public and nonprofit private entities for projects to plan and develop health centers which will serve medically underserved populations.'" Lomando v. U.S., 667 F.3d 363, 371 (3d Cir. 2011). Thus, "Congress passed the Federally Supported Health Centers Assistance Act of 1992 [FSHCAA], Pub.L. No. 102–501, 106 Stat. 3268 (codified as amended at 42 U.S.C. §§201, 233)." Id. The FSHCAA "created a process by which 'public and nonprofit private entities' receiving federal funds pursuant to 42 U.S.C.

§254b(c)(1)(A) and health practitioners that such entities employ 'shall be deemed to be [employees] of the Public Health Service.' 42 U.S.C. §233(g)(1)(A)." Id. See also D'Alessabdro v. United States, 2019 WL 2514827, *6 n. 4 (W.D.N.Y. 2019) ("The Public Health Services Act ("PHSA"), 42 U.S.C. §201, *et seq.*, as amended by the [FSHCAA], 'provides that eligible community health centers and their employees are considered federal agency employees under the PHS Act for certain purposes.'").

"A new [Federally Supported Health Centers Assistance Act (FSHCAA) was enacted in 1995 to permanently extend and clarify the provisions of the earlier [1992] Act." Estate of Booker v. Greater Phila. Health Action, Inc., 10 F.Supp.3d 656, 660 n. 5 (E.D.Pa. 2014). As the court in Booker, id. at 660, stated:

> the FSHCAA makes a suit against the United States under the FTCA the exclusive remedy for medical negligence claims against public or private nonprofit entities receiving federal funds under 42 U.S.C. §254b and employees of such entities in certain circumstances. Federally funded community health centers like [the Health Center] are entitled to FTCA coverage for malpractice claims against themselves and their employees if the Secretary has deemed the entity and its employees to be employees of the Public Health Service for purposes of 42 U.S.C. §233 with respect to the actions or omissions that are the subject of the underlying malpractice claims.

See also Dawson v. United States, 2018 WL 2440516, *1 (S.D.Ill. 2018) ("Under section 233(a) [of the FSHCAA] , a [FTCA] lawsuit against the United States is the sole remedy "for damage or personal injury, including death, resulting from the performance of medical, surgical, dental, or related

functions ... by any commissioner officer or employee of the Public Health Service while acting within the scope of his office or employment.").

Further,

When a Public Health Service employee is sued for medical negligence in state court, "[u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose," the state court action "shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28." 42 U.S.C. §233(c).

Booker, 10 F.Supp.3d at 662.

Thus, "[t]he United States has the ability pursuant to 42 U.S.C. §233(c) to remove the case from State court at any time before trial." Estate of Peggy Campbell v. South Jersey Medical Center, 2016 WL 7377101, *3 (D.N.J. Dec. 20, 2016) (citation omitted). See also Hui v. Castaneda, 559 U.S. 799, 811 (2010) (The Supreme Court held that "in most §233(a) cases," "proof of scope is ... established by a declaration affirming that the defendant was a PHS official during the relevant time period."). In Hui, id., the Supreme Court held that "the FTCA's scope certification procedure was enacted almost two decades after 42 U.S.C. §233(a), which 'confirms that Congress did not intend to make that procedure the exclusive means for PHS personnel to invoke the official immunity provided by §233(a).'" D'Alessabdro, 2019 WL 2514827, *7. Thus, "PHS defendants seeking to invoke the immunity provided by §233(a) [do not have to] rely on the FTCA's scope certification procedure,

16

set forth in §2679(d)." Hui, 559 U.S. at 811. Further, the Supreme Court in Hui, id. at 812, held that "the immunity provided by §233(a) precludes Bivens actions against individual PHS officers or employees for harms arising out of conduct described in that section", and essentially that the Westfall Act's Bivens exception, §2679(b)(2)(A), does not preserve a Bivens action against PHS officers and employees. Id. at 809. Further, "[o]nce a certification is made pursuant to 42 U.S.C. §233(g)(1)(F), 28 C.F.R. §15.4 mandates that the exclusive remedy against the subject employee is the FTCA, which itself authorizes substitution." D'Alessabdro, 2019 WL 2514827, at *8 (citing Hui, 559 U.S. at 801-02).

Additionally, "[the PHSA] 42 U.S.C. § 233(a) is narrower in scope than the FTCA; it applies to a discrete group of Federal employees working at covered health centers who statutorily 'enjoy immunity from medical malpractice claims or other claims, including claims for violating constitutional rights, if the alleged harmful action occurred while the employees were providing medical or related services.'" D'Alessabdro, 2019 WL 2514827, at *7 (citation omitted).

In Dawson, 2018 WL 2440516, *2, the court discussed the relationship between the Westfall Act and the FSHCAA and stated:

> Regarding the FSHCAA, section 233(a) makes the remedy against the United States under the FTCA exclusive of any other civil action claiming damages due to injury stemming from a Public Health Service employee's alleged negligence. It is an act of limited scope applying only to those deemed employees of the

Public Health Service. The broader reaching coverage of the Westfall Act, applying to "employees of the government," does not overlap with the provisions of the FSHCAA. See Hui v. Castaneda, 599 U.S. 799, 800 (2010) ("Because §233(a) refers only to '[t]he *remedy* ... provided by [the FTCA] (emphasis added), only those portions of the FTCA that establish its remedy are incorporated by § 233(a)[.] ... Section 2679(b) [the Westfall Act] is not such a provision.").

The court in Dawson, id., then cited to Hui, at 800-01, and stated that the Supreme Court "explain[ed] that to layer all of the FTCA's procedures contained in the Westfall Act, section 2679, into 42 U.S.C. §233(a), would be to effectively imply a repeal of the FSHCAA and '[r]epeals by implication are not favored and will not be presumed absent a clear and manifest legislative intent to repeal. Nothing suggests that Congress intended §2679(b) to repeal §233(a)'s more comprehensive immunity.'" (internal citation omitted).

In this case, plaintiffs' state court action was never removed to federal court by the Attorney General under §233(c). Nor does the record indicate that Arenson was deemed an employee of the Public Health Service and there is not any scope certification by the Attorney General regarding Arenson. Also, the United States has not been substituted as the defendant in plaintiffs' state court action. Thus, the court in this case is not governed by §233, which "provides the sole and exclusive means for bringing claims for personal injury against the United States when, ..., the offending [medical personnel] was employed by a deemed employee of the Public Health Service and was certified acting within the scope of his employment at the time of the

incident." <u>Dawson</u>, 2018 WL 2440516, *2.

Next, the court discusses whether plaintiffs are entitled to equitable tolling.

The FTCA's statute of limitations "in appropriate circumstances" is subject to the equitable tolling doctrine. <u>Santos ex rel., Beato v. U.S.</u>, 559 F.3d 189, 194-95 (3d Cir. 2009).

Initially, since plaintiffs failed to exhaust administrative remedies prior to filing their action in this court due to the untimely presentment of their SF-95 tort claim to HHS, equitable tolling "provides no relief where a plaintiff fails to exhaust administrative remedies *prior* to initiating a case." <u>Young v. Temple Univ. Hosp</u>., 2019 WL 5569510, *6 (E.D.Pa. Oct. 28, 2019) (emphasis original) (citing <u>Walker v. U.S.</u>, 616 F.App'x 497, 500 (3d Cir. 2015)).

Additionally, "[e]quitable tolling may apply to FTCA claims in three instances: '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'" <u>Id</u>. at *7 (citations omitted). Further, "[e]quitable tolling requests are judged by exacting standards and mere excusable neglect is insufficient", and "'a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim.'" <u>Id</u>. (internal citations omitted).

As discussed, "[n]o claim can be brought under the FTCA unless the

plaintiff first presents the claims to the appropriate federal agency and the agency renders a final decision on the claim." Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015). Plaintiffs simply cannot escape the undisputed fact that they were notified that the FTCA applied to their claim prior to the deadline to present their tort claim to HHS. In fact, plaintiffs had their SF-95 complete and ready to present to HHS, however, they did not comply with the FTCA's requirement to timely present their tort claim to the appropriate agency, HHS.

Thus, equitable tolling is not warranted since it is undisputed that plaintiffs' counsel was timely advised by Keris that the Health Center and its employees were deemed to be federal employees under the FTCA for malpractice actions, still within two years of plaintiffs' claim accrual date, and nonetheless failed to timely present plaintiffs' tort claim to HHS. In fact, plaintiffs had ample time after Keris advised them their action fell under the FTCA to properly present their tort claim to HHS. However, plaintiffs failed to exercise due diligence in presenting their tort claim to HHS within two years after the accrual of their claim. As the government states, service of plaintiff's SF-95 on the Health Center was not proper presentment to HHS, and that "[b]asic research on this issue would have revealed that the statute, which 'deems' a community health center employee to be a Public Health Service employee does not 'deem' a community health center to be a Federal agency for any purpose." (Doc. 18 at 13) (citing 28 U.S.C. §233(g)).

Thus, the court cannot apply equitable tolling in this case. See Phillips v. Generations Family Health Center, 657 Fed.Appx. 56 (7th Cir. 2016).

Finally, the court finds that limited discovery is not warranted in this case as plaintiffs suggest regarding the issue of when HHS received their SF-95 and whether it was presented to HHS in a timely manner since there is no genuine issue of material fact on these issues. The government has submitted undisputed evidence regarding the receipt of plaintiffs' SF-95 by Arenson, Nocilla and Torres, and plaintiffs have the burden of proof to show that they timely presented their tort claim to HHS. See Medina v. City of Philadelphia, 219 Fed.Appx. 169, 173-74 (3d Cir. 2007) (Third Circuit held that "a plaintiff must demonstrate that the appropriate federal agency actually *received* the claim") (emphasis original).

Additionally, as the government points out, (Doc. 18 at 12), "Plaintiffs have submitted their own Statement of Material Facts and Brief and have not raised any facts or any factual bases upon which to dispute Defendant's facts regarding receipt [of their SF-95 by HHS]", and "even if Plaintiffs now raised facts that suggested that they submitted paperwork to the Health Center on an earlier date, they still would not be entitled to relief because Arenson and Nocilla never had any obligation to present the [SF-95 tort] claim to Torres [at HHS] when they received the SF-95 at the Health Center."

Further, under some circumstances, a claim may be deemed "constructively filed." Kraft v. Office of Chief Counsel Div. of V.A., 2018 WL

1293107, *3 (D.De. March 13, 2018) (citing Greene v. United States, 872 F.2d 236, 237 (8th Cir. 1989); Bukala v. United States, 854 F.2d 201, 204 (7th Cir. 1988)). "[T]he Regulations provide that if an administrative claim is presented to a federal agency whose activities did not give rise to the claim, that agency shall transfer the claim forthwith to the appropriate agency if the agency can be identified from the claim, or return the claim to the claimant if transfer is not feasible." Id. (citing 28 C.F.R. §14.2(b)(1); Ahmed v. United States, 334 Fed.Appx. 512, 513–14 (3d Cir. 2009))."Courts permitting constructive filing in the FTCA context have largely been resolving situations where the government's failure to transfer the claim led to the claimant's failure to comply with the FTCA's statute of limitations." Id. (quoting Ahmed, 334 Fed.Appx. at 514 (citing Bukala, 854 F.2d at 204 (permitting constructive filing of complaint with wrong agency where agency did not transfer claim to appropriate agency within the two-year statute of limitations)). However, the Health Center is not a federal agency. See Motta, 717 F.3d at 845 ("Section 14.2(b)(1) pertains to federal agencies that erroneously receive an FTCA claim, and the [Health Center] is not a federal agency."). See also 28 C.F.R. §14.1 ("These regulations shall apply only to claims asserted under the Federal Tort Claims Act. The terms Federal agency and agency ...include the executive departments, the military departments, independent establishments of the United States and corporations primarily acting as instrumentalities or agencies of the United States ....").

Assuming *arguendo* that the Health Center was a federal agency, there is no evidence that anyone at the Health Center acted negligently when they received plaintiffs' SF-95. "Where one agency of government attempts in a dutiful and timely fashion to transfer a misdelivered claim to the appropriate federal agency and despite due diligence the claim arrives at the proper agency after the two year limitations period has run, the claim will be time-barred." Kraft, 2018 WL 1293107, *3 (citations omitted).

Thus, as the government states, "the issue of when exactly Arenson or Nocilla received the SF-95 is inconsequential to the date that Torres received the document because Arenson and Nocilla were not under an obligation to transfer that document to HHS, nor does their transfer of the documentation to HHS constitute timely presentment on Plaintiffs' behalf." (Doc. 18 at 13).

Accordingly, since plaintiffs failed to present their tort claim to the proper federal agency (HHS) within two years of the accrual of their cause of action, the claim is barred under §2401(b). Thus, the United States' motion for summary judgment will be granted regarding plaintiffs' claims asserted under the FTCA and judgment will be entered in favor of the United States. See Kraft, 2018 WL 1293107, *3-4 ("Plaintiff's claim was untimely presented because it was not sent to an agency, much less an improper agency, and it was filed too close to the end of the two year time-frame.").

## IV.    Conclusion

Based on the foregoing, the United States' motion for summary judgment, **(Doc. 9)**, will be **GRANTED** and, **JUDGMENT** will be entered in favor of the United States and against plaintiffs as to plaintiffs' claims raised under the FTCA. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 28, 2020**

19-1786-01